UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN PROPERTY VENTURES, LLC,

      Plaintiff,

                                     Case No. 14-10215

v.

                                     Hon. Patrick J. Duggan

UNITED STATES OF AMERICA,

      Defendant.

_____/

## OPINION AND ORDER GRANTING THE GOVERNMENT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Plaintiff Michigan Property Ventures, LLC ("MPV") instituted the present action by filing a four-count complaint with this Court on January 17, 2014. The Complaint names the United States of America (the "Government") as the sole defendant and states that the action is one to quiet title to, and for declaratory judgment regarding, three parcels of real property owned by MPV (the "Properties").

Presently before the Court is the Government's Motion to Dismiss for Lack of Subject Matter Jurisdiction filed pursuant to Federal Rule of Civil Procedure 12(b)(1). The Government seeks dismissal of the entire lawsuit, arguing that the United States has not waived its sovereign immunity and that this Court, therefore, lacks subject matter jurisdiction. The motion has been fully briefed and a hearing

was conducted on June 11, 2014.  For the reasons stated herein, the Court grants
the Government's Motion to Dismiss.

## I.      BACKGROUND

MPV, a Michigan limited liability company, "purchases real estate property
out of foreclosure or similar distressed circumstances, improves the property, and
then resells the property."  (Compl. ¶ 1.)  Three such properties, all located in
Wayne County, Michigan, are involved in the present dispute (the "Properties").
(*Id.* ¶ 9.)  On November 21, 2013, the United States recorded with the Wayne
County Register of Deeds three documents (one for each parcel of real property)
titled "Affidavit Relating to Matter Affecting Title to Realty" (the "Affidavits")
pursuant to Michigan Compiled Laws § 565.451a.[1]  (*Id.*)  These Affidavits provide
notice "that the United States of America is aware of certain fact(s), condition(s),
and event(s), proscribed by 18 U.S.C. § 1343; 18 U.S.C. §§ 1956 and 1957 which

---

[1] This statute provides, in pertinent part:

An affidavit stating facts relating to any of the following matters
which may affect the title to real property in this state made by any
person having knowledge of the facts or by any person competent to
testify concerning such facts in open court, may be recorded in the
office of the register of deeds of the county where the real property is
situated: . . .

(b) Knowledge of the happening of any condition or event which may
terminate an estate or interest in real property[.]

Mich. Comp. Laws § 565.451a(b).

2

may terminate an estate or interest in the real property[.]"  (Affs. attach. to Compl.,
Ex. A.)  The Affidavits, citing various statutory provisions, also indicate "that real
property which constitutes or is traceable to proceeds of federal mortgage fraud,
bank fraud and/or wire fraud violations, or which is involved in a transaction or
attempted transaction in violation of federal money laundering statutes, shall be
subject to forfeiture to the United States."  (*Id.*)

The Complaint alleges that "[t]hrough these Affidavits, the United States
claims in interest in the [P]roperties[.]"  (Compl. ¶ 10.)  This claimed interest
"adversely affects MPV's title in the properties, renders title unmarketable, and
otherwise amounts to a 'freeze' on MPV's assets and a seizure of its property."
(*Id.* ¶ 11.)  Because "[t]he Affidavits are not authorized by statute or any other
authority[,]" and because the Government has not initiated civil or criminal
proceedings against MPV or otherwise pursued forfeiture, the Affidavits have the
effect of a pre-indictment forfeiture.  (*Id.* ¶¶ 12-14.)  In other words, "[t]he
Affidavits are . . . an unauthorized and illegal interference with MPV's property
rights in its Properties."  (*Id.* ¶ 35.)

On January 17, 2014, in effort to clear title to the Properties so that they may
be sold, MPV filed this lawsuit.  (*Id.* ¶ 19.)  The Complaint contains the following
counts: Count I – Quiet Title; Count II – Declaratory Judgment that the Affidavits
are not Authorized by Michigan Compiled Laws § 565.451a; Count III –

Declaratory Judgment that the Affidavits Constitute Defective Notices of Lis Pendens; and Count IV – Declaratory Judgment that the Affidavits Amount to a Pre-Indictment Freeze of Assets in Violation of Federal Law.  MPV seeks various forms of relief, namely, that the Court: (1) quiet title in its favor; (2) declare the Affidavits unlawful under various Michigan statutes, as well as federal law, and order the United States to withdraw the Affidavits; (3) enjoin the United States from further interfering with MPV's title, assets, or other properties; and (4) award MPV costs and attorney's fees.  (Compl. 16-17.)

On March 18, 2014, the Government filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). MPV responded on April 1, 2014, and the Government replied on April 15, 2014.

## II.    LEGAL STANDARD

Motions to dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) fall into two categories: facial attacks and factual attacks.  *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  In elucidating what distinguishes a facial attack from a factual attack, Sixth Circuit case law provides:

> A *facial* attack is a challenge to the sufficiency of the pleading itself.  On such motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party . . . . A *factual* attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge

4

> to the factual existence of subject matter jurisdiction.  On
> such a motion, no presumptive truthfulness applies to the
> factual allegations . . . and the court is free to weigh the
> evidence and satisfy itself as to the existence of its power
> to hear the case.

*Id*. (internal citations omitted) (emphasis in original).  The plaintiff bears the

burden of demonstrating that a court has jurisdiction over the subject matter.  *RMI*

*Titanium Co. v. Westinghouse Elec. Corp.*, 78 F3.d 1125, 1134 (6th Cir. 1986)

(citation omitted).

In this case, the Government invokes the doctrine of sovereign immunity to

dispute the existence of subject matter jurisdiction.  Despite MPV's efforts to

characterize the instant motion as a "'facial attack' challenging the pleading

itself[,]" (Pl.'s Br. 2 n.2), the Government's invocation of sovereign immunity

constitutes a factual challenge to this Court's jurisdiction, (Gov't's Reply 1 n.1).

### III.   ANALYSIS

Federal courts are courts of limited jurisdiction and may only exercise those

powers authorized by the United States Constitution and federal statutes enacted by

Congress.  Accordingly, the first and most fundamental question presented in every

civil action brought in federal court is whether subject matter jurisdiction exists.

*Metro Hydroelectric Co. v. Metro Parks*, 541 F.3d 605, 610 (6th Cir. 2008);

*Valinski v. Detroit Edison*, 197 F. App'x 403, 405 (6th Cir. 2006) (indicating that

federal courts have an independent obligation to strictly police the boundaries of its subject matter jurisdiction).

Sovereign immunity is one important limitation on the subject matter jurisdiction of federal courts.  It is axiomatic that, as sovereign, the United States is immune from suit unless it clearly consents to be sued.[2]  *See, e.g.*, *United States v. Sherwood*, 312 U.S. 584, 586, 61 S. Ct. 767, 770-71 (1941) (citations omitted). "The 'terms of [the United States'] consent to be sued in any court determine that court's jurisdiction to entertain the suit[.]'"  *Clay v. United States*, 199 F.3d 876, 879 (6th Cir. 1999) (quoting *United States v. Dalm*, 494 U.S. 596, 608, 110 S. Ct. 1361, 1368 (1990)); *see also Munaco v. United States*, 522 F.3d 651, 652-53 (6th Cir. 2008) ("[T]he existence of [the United States'] consent [to suit] is a prerequisite for jurisdiction.") (quotation omitted) (citing, *inter alia*, *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 411-12 (1821) ("The universally received opinion is, that no suit can be commenced or prosecuted against the United States.")).

---

[2] This has been the law since the time of the Founding.  In one of his many musings on the topic of federal governance, Alexander Hamilton expressly disavowed any suggestion that the Constitution's jurisdictional provisions should be read as implicitly displacing sovereign immunity.  THE FEDERALIST No. 81, at 487-88 (Alexander Hamilton) (Clinton Rossiter ed., 1961) ("It is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent.")

"A waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'" *United States v. Mitchell*, 445 U.S. 535, 538, 100 S. Ct. 1349, 1251 (1980) (quoting *United States v. King*, 395 U.S. 1, 4, 89 S. Ct. 1501, 1503 (1969)). Thus, when the federal government has waived its immunity and consented to suit, courts must strictly construe the waiver. *Munaco*, 522 F.3d at 653 (citing *Young v. United States*, 332 F.3d 893, 895 (6th Cir. 2003)).

As the basis for this Court's jurisdiction, MPV identifies 28 U.S.C. §§ 1331, 1346(f), and 1367(a). (Compl. ¶¶ 3-4.) However, sections 1331 and 1367(a) are jurisdictional statutes providing for general federal question jurisdiction and supplemental jurisdiction over state law claims, respectively. As the Sixth Circuit explained in *Munaco*, "jurisdictional statutes, such as the statute giving federal district courts original jurisdiction of civil actions arising under [the] Constitution, laws, or treaties of [the] United States, do not operate as waivers of sovereign immunity." *Id.*, 522 F.3d at 653 n.3 (citing *Leistiko v. Stone*, 134 F.3d 817, 820 (6th Cir. 1998)).

Counts II through IV, all of which seek declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, rely on either 28 U.S.C. § 1331 and § 1367(a) as this Court's jurisdictional basis. Although the Declaratory Judgment Act is a federal statute, it is well-established that it does not create an independent basis for federal subject matter jurisdiction; rather, "[t]he Act merely provides

7

courts with discretion to fashion a remedy.  Thus, before invoking the Act, the court must have jurisdiction already." *Heydon v. MediaOne of Se. Mich., Inc.*, 327 F.3d 466, 470 (6th Cir. 2003) (citations omitted).  A party seeking declaratory relief pursuant to 28 U.S.C. § 2201, therefore, "must establish either diversity or federal question jurisdiction." *Woodmen of the World/Omaha Woodmen Life Ins. Soc'y v. Scarbro*, 129 F. App'x 194, 195 (6th Cir. 2005) (per curiam).  This requirement includes overcoming any jurisdictional hurdles imposed by sovereign immunity because the Declaratory Judgment Act does not "waive the sovereign immunity of the United States." *Foreman v. Gen'l Motors Corp.*, 473 F. Supp. 166, 181-82 (E.D. Mich. 1979) (citations omitted).  In this case, MPV has not even endeavored to identify any waiver of sovereign immunity applicable to the counts seeking declaratory relief.  As discussed above, neither 28 U.S.C. § 1331 nor § 1367(a) provide this Court with jurisdiction.  *Munaco*, 522 F.3d at 653 n.3 (citation omitted).  Accordingly, MPV has not discharged its burden of demonstrating that this Court has subject matter jurisdiction over Counts II through IV.

Having dismissed the notion that two of the three jurisdictional statutes cited by MPV apply in this case, the Court turns to MPV's last potential avenue into federal court: 28 U.S.C. § 1346(f).  This jurisdictional statute provides that "[t]he district courts shall have exclusive original jurisdiction of civil actions under section 2409a to quiet title to an estate or interest in real property in which an

interest is claimed by the United States."  28 U.S.C. § 1346(f).  Count I of MPV's

Complaint seeks to quiet title.  Accordingly, if this Court finds that the

Government has expressly waived its immunity, § 1346(f) will serve as MPV's

jurisdictional vehicle, providing the Court with the requisite authority to entertain

the suit and to hear MPV's claim on the merits.  MPV contends that the

Government has waived its immunity, citing 28 U.S.C. §§ 2409a and 2410 as

support.  The Government disagrees.

## A.     The Government Has Not Waived Immunity under 28 U.S.C. § 2409a.

The federal legislature possesses the authority to waive the sovereign

immunity of the United States; as a corollary, Congress may also condition any

such waiver upon the existence of certain criteria.  *See, e.g.*, *Clay*, 199 F.3d at 879.

This is precisely what Congress did in enacting the Quiet Title Act, which

provides, in pertinent part:

> The United States may be named as a party defendant in a civil action
> under this section to adjudicate a disputed title to real property in
> which the United States claims an interest, other than a security
> interest or water rights. . . .

28 U.S.C. § 2409a(a).  To operate as a waiver of sovereign immunity, the plain

language of the statute requires the presence of two conditions: (1) "the United

States must claim an interest in the property at issue, and" (2) "there must be a

disputed title to real property."[3] *Leisnoi, Inc. v. United States*, 170 F.3d 1188, 1191 (9th Cir. 1999). "If either condition is absent, the Act in terms does not apply and the district court lacks jurisdiction to entertain the action." *Id.*

### 1.      *Has the United States claimed an interest in the Properties?*

The Government argues that the Affidavits neither state nor assert that the United States claims any interest in the Properties. Rather, all the Affidavits do is impart notice in the chain of title so that no subsequent purchaser of the Properties can be deemed a bona fide purchaser.

Conversely, MPV contends that the Government's Affidavits claim an interest for the United States. This contention is rooted in "the United States of America['s] aware[ness] of  certain fact(s), condition(s), and event(s), proscribed by [federal law] which may terminate an estate or interest in the real property[.]" (Affs. attach. to Compl., Ex. A.) The Government's interest and origin of the that interest, according to MPV, arises from the fact that "real property which constitutes or is traceable to proceeds of federal mortgage fraud, bank fraud and/or wire fraud, or which is involved in a transaction or attempted transaction in violation of federal money laundering statutes, shall be subject to forfeiture to the United States." (*Id.*) Under MPV's theory, when read in tandem, these excerpts from the Affidavits unmistakably denote a claimed forfeiture interest by the United

---

[3] Title 28 U.S.C. § 2409a(a) also does not apply if the United States claims a security interest or claims an interest involving water rights.

States.  Because § 2409a(a) does not specify what types of claimed interests trigger the statute, MPV turns to Black's Law Dictionary to define both "interest"[4] and "contingent interest"[5] prior to concluding that the aforementioned forfeiture interest suffices.  (Pl.'s Resp. 10.)

Neither party has cited a case involving facts similar to those presented here nor is the Court aware of one.  There appears to be a paucity of case law on the issue of whether an affidavit clouding title by virtue of providing notice that the property may, at some time in the future, be subject to forfeiture under federal law is fairly characterized as an "interest" claimed by the United States for purposes of § 2409a(a).  Assuming – but explicitly not deciding – that the alleged forfeiture interest satisfies the first prong of § 2409a, the Court turns to the second jurisdictional requirement.

### 2.      Is there a title dispute to real property?

Even if the contingent forfeiture interest discussed above satisfies the requirement that "the United States claims an interest," for this Court to find that the Government has waived its sovereign immunity (thus permitting this Court to entertain the present action), there must exist "a disputed title to real property[.]"

---

[4] "Interest" is defined as "[a] legal share in something; all or part of a legal or equitable claim to or right in property."  Black's Law Dictionary (9th ed. 2009).

[5] "Contingent interest" is defined as "[a]n interest that the holder may enjoy only upon the occurrence of a condition precedent."  Black's Law Dictionary (9th ed. 2009).

28 U.S.C. § 2409a(a).  The parties disagree as to whether this condition has been satisfied.  The Government argues that "there is no dispute regarding title to the Properties.  To the contrary, the Affidavits expressly state that the Properties are titled to MPV."  (Gov't's Br. 8.)  MPV disputes the Government's position on the basis that its argument is "disingenuous."  (Pl.'s Br. 10.)  MPV further argues that "[t]he allegations in the Complaint clearly demonstrate MPV disputes the United States' claim of an [sic] contingent interest that clouds title."  (*Id.*; *id.* at 10-11 (explaining that the Affidavits are "unauthorized" by law and "impermissibly render MPV's title unmarketable").  This Court believes that the Government's position is the correct one.

The Sixth Circuit has determined that the plain language of the Quiet Title Act "clearly limits its scope to adjudications in which the title or ownership of real property is in doubt."  *Saylor v. United States*, 315 F.3d 664, 670 (6th Cir. 2003).[6]

---

[6] MPV distinguishes *Saylor* from the facts presented herein.  In that case, the plaintiffs attempted to challenge the United States' title to property obtained by way of a statutory condemnation proceeding.  *Saylor v. United States*, 315 F.3d 664, 666 (6th Cir. 2003).  Pursuant to the Declaration of Taking Act, codified at 40 U.S.C. § 258a, the condemnation of the property vested full title in the United States.  *Id.* at 670.  There was, therefore, no dispute that the United States owned the property outright.  As a result, the Sixth Circuit held that the plain language of the Quiet Title Act requiring disputed title to real property precluded the plaintiffs' claim.  *Id.*

MPV distinguishes these facts from those existing here by pointing out that "[u]nlike MPV, the plaintiffs in *Saylor* did not challenge the United States' compliance with the statute that gave it title. . . . Rather, the *Saylor* plaintiffs

The Government does not claim title to, or ownership of, the Properties; rather, it is undisputed that MPV holds title to the Properties.  (Pl.'s Resp. 3 ("The United States does not dispute that MPV holds title to the Properties.").)  That the Government's conduct may have clouded title to the Properties does not transform the instant dispute into a dispute about who owns the Properties.  In this regard, the Court notes that MPV's reliance on favorable quotations from *Knapp v. United States*, 636 F.2d 279 (10th Cir. 1980) and *Hawaii v. United States*, 676 F. Supp. 1024 (D. Haw. 1988), *aff'd and adopted*, 866 F.2d 313 (9th Cir. 1989) is misplaced.  (*See, e.g.*, Pl.'s Resp. 7 ("'Whether the interest claimed amounts to legal title in the United States is irrelevant if it constitutes a cloud on the plaintiffs' title.'" (quoting *Knapp*, 636 F.2d at 282)); *id.* ("'[R]easonable awareness' that the United States claims 'some interest adverse to the plaintiff' is sufficient to waive sovereign immunity.'" (quoting *Hawaii*, 676 F. Supp. at 1033)).)  As the Government argued in its briefs and reiterated at oral argument, these cases

---

challenged a 1933 conveyance on the grounds that they did not receive notice of the action adjudicating the United States' lien against the property. . . ."  (Pl.'s Br. 11 (internal citations omitted).)  This line of argumentation is unavailing at best. While it is clear from the pleadings and briefs that MPV challenges the Government's compliance with federal forfeiture statutes and various Michigan statutes regarding the recordation of affidavits, (*id.* at 11-12), the Quiet Title Act does not waive the United States' sovereign immunity in either regard.  It appears that this action, which challenges procedural defects in connection with the filing of the Affidavits, amounts to a lawsuit challenging the federal government's allegedly *ultra vires* acts.  That the action has been dressed up to look like a title dispute does not make it so.

involved a determination of when notice of disputed title to ownership arose such that the Quiet Title Act's twelve-year statute of limitations, 28 U.S.C. § 2409a(g), began to run, and are therefore inapposite.  MPV's reliance on *Hawaii*, a case from the Ninth Circuit, is demonstrably more problematic in light of the Ninth Circuit's recent decision in *Mills v. United States*, 742 F.3d 400, 405 (9th Cir. 2014).  In *Mills*, the Ninth Circuit explained:

> In construing the scope of the QTA's waiver, we have read narrowly the requirement that the title at issue be "disputed."  *See Alaska v. United States*, 201 F.3d 1154, 1164-65 (9th Cir. 2000). For a title to be disputed for purposes of the QTA, the United States must have adopted a position in conflict with a third party regarding that title.  *See id.*  In *Alaska v. United States*, we held that the title to a riverbed underlying the Black River was not disputed because the government had not expressly asserted a claim with respect to that real property.  *See id.*  Even though the United States did not disclaim its interest to the riverbed, *and reserved the right to make a claim to the riverbed in the future*, we reasoned that "whatever dispute there may be, it has not yet occurred," and concluded that "[a] title cannot be said to be 'disputed' by the United States if it has never disputed it."  *Id.* at 1165.  Because the title to the riverbed was not disputed for purposes of the QTA, we remanded for the district court to dismiss the claim for lack of subject matter jurisdiction.  *Id.*

742 F.3d at 405 (emphasis supplied).  After engaging in this analysis, the *Mills* Court held that "[b]ecause the United States does not currently dispute the existence of [a right-of-way over a trail], Mills's action does not meet the QTA's requirement that title 'be disputed.'"  *Id.*  Without such a dispute, the Ninth Circuit held that the United States did not waive its immunity and the lower court lacked jurisdiction over the claim.  *Id.*

14

As in *Mills*, the United States has not disputed MPV's ownership of the Properties.  In fact, the Affidavits explicitly provide that MPV owns the parcels of real property.  Although the Affidavits seem to reserve the United States' right to make a claim to the Properties at issue sometime in the future, *Alaska* teaches that such a reservation does not in and of itself constitute a title dispute.  201 F.3d at 1165.  In short, the Quiet Title Act does not afford MPV a vehicle to challenge the unmarketability of title nor does it authorize lawsuits on the basis of governmental conduct merely clouding title.  "The [Act]'s plain language covers only cases in which title itself is disputed.  Title here indisputably lies with" MPV.  *Saylor*, 315 F.3d at 670.  As a result, this action does not fall within the limited waiver of sovereign immunity set forth in 28 U.S.C. § 2409a(a).

**B.    The Government Has Not Waived Immunity under 28 U.S.C. § 2410.**

As an alternative basis for finding the United States' consent to suit, MPV relies on 28 U.S.C. § 2410, which provides, in pertinent part:

> Under the conditions prescribed in this section and section 1444 of this title for the protection of the United States, the United States may be named a party in any civil action or suit in any district court, . . . to quiet title to . . . real or personal property on which the United States has or claims a mortgage or other lien.

28 U.S.C. § 2410(a)(1).  MPV's theory is that because the statute does not define "lien," anything that "cloud[s] title" in a manner functionally "similar to a lien[]" falls within the ambit of § 2410.  (Pl.'s Resp. 13.)  This argument is unpersuasive.

15

Both mortgages[7] and liens[8] are security interests in property.  The Affidavits do not contain any language suggesting that the Properties are encumbered by a security interest.  Moreover, "similarity to a lien is not what Section 2410 requires to establish a waiver of sovereign immunity."  (Gov't's Reply 2.)  This Court declines MPV's invitation to imply a waiver of sovereign immunity by analogy, as to do so would be improper.  *Mitchell*, 445 U.S. at 538, 100 S. Ct. at 1251 ("A waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'") (quoting *King*, 395 U.S. at 4, 89 S. Ct. at 1503); *Munaco*, 522 F.3d at 653 (reiterating well-established principle that waivers of sovereign immunity are to be strictly construed).  The waiver of sovereign immunity set forth in § 2410 simply does not apply to this case.

## IV.   CONCLUSION AND ORDER

For the reasons stated above, this Court lacks subject matter jurisdiction over the instant dispute.

Accordingly,

---

[7] "Mortgage" is defined as a "conveyance of title to property that is given as security for the payment of a debt or the performance of a duty and that will become void upon payment or performance according to the stipulated terms." Black's Law Dictionary (9th ed. 2009).

[8] "Lien" is a "legal right or interest that a creditor has in another's property, lasting until a debt or duty that it secures is satisfied."  Black's Law Dictionary (9th ed. 2009).

16

**IT IS ORDERED** that the Government's Motion to Dismiss is **GRANTED**

and that this action is **DISMISSED.**

Date:  June 26, 2014

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:

**Danila V. Artaev, Esq.**
**Michael A. Cox, Esq.**
**Linda Aouate, AUSA**